**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**TINA MCNEAL**                                                                                    **PLAINTIFF**

**V.**                                        **CIVIL ACTION NO. 4:23-cv-180-DMB-DAS**

**PREMIER MEDICAL MANAGEMENT**
**OF MISSISSIPPI, INC.**                                                                    **DEFENDANT**

---

**DEFENDANT'S MEMORANDUM OF AUTHORITIES**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Defendant Premier Medical Management of Mississippi, Inc. ("PMM" or "Defendant"), by and through its counsel of record, submits this memorandum of authorities in support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

## INTRODUCTION

Plaintiff Tina McNeal ("McNeal" or "Plaintiff"), a Physical Therapist ("PT") employed at-will with PMM, walked off the job in the middle of her scheduled shift to attend a high school basketball game, despite being told directly by her supervisor that her time off request had been denied, and even though her unauthorized absence would cause the clinic to close that afternoon because there was no PT to supervise PMM's Physical Therapist Assistants ("PTA"). The next day, McNeal was hostile, angry, and belligerent with her supervisor when she learned that her time off request for later that week was denied. McNeal approached her supervisor, raising her voice and called him "unprofessional and selfish" in front of patients and other PMM employees and then refused to leave when her supervisor instructed her to clock out and go home. In response to McNeal's insubordination and misconduct, PMM terminated her employment on March 1, 2023.

1

Rather than accept responsibility for her own actions, McNeal instead claims that PMM intentionally discriminated against her because of her age (43 years old when terminated) in violation of the Age Discrimination in Employment Act ("ADEA") and her race (African American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et. seq.* ("Title VII") and 42 U.S.C. § 1981, and that PMM retaliated against her for engaging in nonexistent protected conduct in violation of Title VII and Section 1981.

Put simply, McNeal has no evidence that even suggests her race or age played any role whatsoever in PMM's decision to terminate her employment after her admitted policy violations, unprofessional conduct, and insubordination. Likewise, McNeal admits she never reported discrimination or harassment during her employment, and therefore, she cannot demonstrate that she engaged in any protected activity as required to sustain her retaliation claim. Because the undisputed material facts clearly show that McNeal's claims fail as a matter of law, the Court should grant PMM's motion for summary judgment and dismiss this action in its entirety with prejudice.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I. PMM is an Equal Opportunity Employer.

PMM provides quality primary care, internal medicine, and pediatrics to its patients in central Mississippi. *Declaration of Kristen Reiber,* Ex. A. PMM also provides rehabilitation services such as physical therapy and occupational therapy. *Id.* PMM is an equal opportunity employer that strives to provide equal employment opportunities to all employees and applicants for employment. *Id.*; *Equal Opportunity Policy*, att. A-1 to *Reiber Dec.* By policy and practice, PMM prohibits discrimination based on race or age, among other protected characteristics, and does not tolerate any form of discrimination and/or retaliation against employees by physicians,

2

other providers, managers, supervisors, co-workers, or non-employees. *Id.*; *Harassment, Discrimination, & Retaliation Policy*, att. A-2 to *Reiber Dec.*; *Reiber Dec.*

Employees with questions or workplace concerns are encouraged to bring these issues to the attention of their supervisor, department manager, or the Human Resources Coordinator. *Id.* Furthermore, if an employee's concerns involve the employee's supervisor, PMM's policies instruct the employee to report their concerns directly to the Human Resources Department and/or Senior Management. *Id.* PMM is committed to thoroughly investigating and addressing every reported complaint of unlawful discrimination and/or retaliation. *Id.*

## II. McNeal's Employment with PMM.

PMM hired McNeal as a PT on or about June 20, 2005. *Deposition of Tina McNeal*, Ex. B, p. 80; *New Hire Form*, att. A-3 to *Reiber Dec.*; *Declaration of Scott Cockroft*, Ex. C. McNeal agrees she was at all times at-will employee of PMM. *McNeal Dep.*, p. 103; *Termination of Employment Policy*, att. A-4 to *Reiber Dec.*; *Rehab Team Meeting Minutes, dated September 28, 2021*, att. A-5 to *Reiber Dec.* Throughout her tenure with PMM, McNeal reported directly to PMM's Director of Rehabilitation Services, Scott Cockroft. *McNeal Dep.*, pp. 77–78; *Cockroft Dec.* McNeal also testified that she reported to Head Physical Therapist Deidra "Dee" Cockroft. *Id.* at pp. 89-90. While Dee Cockroft is PMM's most senior physical therapist, she has no authority to hire, discipline, or discharge employees or to change or enact policies. *McNeal Dep.*, p. 167; *Reiber Dec.* Additionally, although Scott Cockroft and Dee Cockroft are married, McNeal testified that Cockroft treated her more harshly than the other employees. *McNeal Dep.*, pp. 80-81.

McNeal was provided with a copy of PMM's Employee Handbook, including PMM's policies prohibiting discrimination and retaliation and requiring her to report any concerns to the appropriate individuals. *McNeal Dep.*, pp. 104–05; *Reiber Dec.* McNeal admits she never made

any such report of alleged discrimination or retaliation at any time during her employment. *McNeal Dep.*, p. 109; *Reiber Dec.*

**A.      PMM's Policies Regarding Planned Absences**

PMM trained McNeal on its policies regarding her work schedule, eligibility for Paid Time Off ("PTO"), and attendance expectations. *Reiber Dec.*; *Cockroft Dec.*  Specifically, PMM's Hours of Work policy clearly states that "[e]mployees are expected to work their regularly scheduled hours and may not change their regularly scheduled work hours without prior authorization from their supervisor." *Hours of Work Policy*, att. A-6 to *Reiber Dec.*; *see also Employee Performance and Conduct Policy*, att. A-7.

Additionally, PMM's Attendance and Punctuality policy provides that "[o]n occasions other than scheduled or approved time off, employees are expected to report to their designated work sites punctually as scheduled, ready and willing to work all scheduled hours and required overtime." *Attendance and Punctuality Policy*, att. A-8 to *Reiber Dec*. Importantly, like all PMM employees, McNeal was required to "notify [her] supervisor of an unscheduled absence or tardiness within a reasonable time in order to provide adequate time for the supervisor to staff accordingly." *Id.*  PMM's policy explicitly informed McNeal that the failure to personally notify her supervisor of any unscheduled absence within a reasonable time "may result in disciplinary action" and that "[r]eporting an unscheduled absence or tardiness to a co-worker is not acceptable." *Id.*

PMM provides full-time employees like McNeal with the opportunity to earn and use PTO in accordance with its Hours of Work and Attendance and Punctuality policies. *Reiber Dec.* However, an employee's ability to use PTO on demand is not guaranteed, and PMM's PTO policy explains that "[r]equests for PTO will be evaluated and approved by the department manager based

4

on staffing needs, workloads, etc." *Paid Time Off Policy*, att. A-9 to *Reiber Dec.*; *McNeal Dep.*, pp. 116-17; *Reiber Dec.* Additionally, PMM informed McNeal that "[a]pproval of PTO requests will be based on a number of factors, including business needs and staffing requirements. It should be recognized that in some cases it may be difficult to fit in vacation time and that vacations may have to be deferred." *Paid Time Off Policy*; *McNeal Dep.*, pp. 116-17; *Reiber Dec.* As McNeal admits, she was required to turn in a PTO request form "in a timely manner" to Cockroft in order for it to be considered for approval. *McNeal Dep.*, p. 115.; *Reiber Dec.*; *Cockroft Dec.*

> ### B. PMM Counsels and Disciplines McNeal Regarding Violations of PMM Policies and Procedures.

Throughout McNeal's employment at PMM, she consistently struggled with attendance and was counseled and disciplined regarding her failure to comply with PMM's policies regarding absences and PTO. *Reiber Dec.*; *Cockroft Dec.* For example, on April 19, 2016, McNeal received a verbal warning for failure to submit a PTO request and for being absent from work without supervisor approval. *Cockroft Dec.; PMM Employee Counseling Report April 19, 2016,* att. A-10 to *Reiber Dec.* PMM had previously counseled McNeal and other employees regarding time off requests and attendance in a team meeting on January 5, 2016, and McNeal was specifically counseled that she was not permitted to schedule time off unless she received approval from her supervisor. *Id.* McNeal admits that even in 2016, she knew the process of submitting time off requests and the importance of arriving to work on time. *McNeal Dep.*, pp. 126-27.

On May 11, 2016, Cockroft counseled McNeal that all time off requests must be submitted and approved in advance. *McNeal Dep.*, pp. 125-27; *Excerpted Performance Reviews of Tina McNeal (Mid-Year Performance Review, dated May 11, 2016)*, att. A-11 to *Reiber Dec.; Cockroft Dec.* In September of 2016, McNeal received a written warning for modifying her schedule without supervisor approval, arriving to work late, and scheduling a shoulder PT appointment

without supervisor approval. *PMM Employee Counseling Report, dated September 23, 2016*, att. A-12 to *Reiber Dec.*; *McNeal Dep.*, pp. 133-37. McNeal admits that although Cockroft advised her to contact him if a patient needed shoulder PT, she ignored his instructions and scheduled them anyway. *Id.; Cockroft Dec.*

Cockroft regularly counseled his team during rehab team meetings (which included McNeal) about PMM's strict rules surrounding time off, including its process for "alterations of … work schedules" and other issues. *McNeal Dep.*, pp. 144-45; *Rehab Team Meeting Minutes, dated August 7, 2018*, att. A-13 to *Reiber Dec.; Cockroft Dec.* McNeal testified that she understood attendance and punctuality was a "pretty big deal" to PMM's management since the topics were addressed at team meetings repeatedly. *McNeal Dep.*, p. 146. During the following rehab team meetings, Cockroft clearly communicated PMM's policies about attendance and time off, management's expectations, as well as the consequences for not complying:

- **August 7, 2018, Rehab Team Meeting** - Cockroft instructed McNeal, along with the other PMM employees, to "turn in a time off request sheet" to Cockroft regardless of whether they were using PTO or not. If an employee submitted a request sheet and Cockroft had not given it back to the employee within 1-2 days before the requested day(s) off, that employee was to speak with Cockroft directly about it. *Rehab Team Meeting Minutes, dated August 7, 2018*; *Cockroft Dec.*

- **December 4, 2018**, **Rehab Team Meeting** - Cockroft reiterated to McNeal, along with other PMM employees, that **"any alteration of an employee's work schedule must be submitted, in writing, to the department supervisor for approval in advance (preferably a minimum of 2 weeks advance notice) of the employee's absence."** *McNeal Dep.*, pp. 141-142; *Rehab Team Meeting Minutes, dated December 4, 2018*, att. A-14 to *Reiber Dec.* Furthermore, Cockroft made clear that PMM's PTO policy specifies that the "[f]ailure to submit a written request will result in no payment for the time missed and will result in formal disciplinary action for each offense." *Cockroft Dec.* Text communications were only acceptable for time off requests when there was an unexpected issue or emergency. *Rehab Team Meeting Minutes, dated December 4, 2018; Cockroft Dec.*

- **February 5, 2019, Rehab Team Meeting** - Cockroft focused on PMM's attendance and punctuality policy with employees. *McNeal Dep.*, pp. 145-46;

*Rehab Team Meeting Minutes, dated February 5, 2019*, att. A-15 to *Reiber Dec.*; *Cockroft Dec.*

- **September 28, 2021, Rehab Team Meeting** - Cockroft. reminded the entire team that their employment was at-will and that any alteration of work schedules required his direct approval. *McNeal Dep.*, pp. 147-150; *Rehab Team Meeting Minutes, dated September 28, 2021*; *Cockroft Dec.* Cockroft again reiterated to McNeal and other PMM employees that just because employees have accrued PTO, they must still abide by PMM's policies regarding attendance and schedule change requests and are not permitted to be absent any time they want. *McNeal Dep.*, pp. 147-150. Cockroft explained that the needs of the company, the patients, and coworkers are all factors of consideration in approving or denying requests to utilize PTO. *Id.* at p. 149. In addition to the attendance and PTO communication, Cockroft counseled McNeal and other PMM employees regarding PMM's expectations for appropriate communication with co-workers and clients. *Id.*; *Cockroft Dec.*

McNeal admits she attended these team meetings and reviewed PMM's PTO and attendance policies.[1] *McNeal Dep.*, pp. 117, 137-38, 141, 144-47, 160. Clearly, after discipline and at least five (5) different meetings regarding the attendance and PTO policy, McNeal understood PMM's policies and procedures regarding time off from work and the proper way to interact with co-workers. *McNeal Dep.*, p. 150. Nevertheless, on March 7, 2022, McNeal again violated PMM's attendance and punctuality policy by arriving to work late multiple times after her lunch period. *McNeal Dep.*, pp. 151-52; *Cockroft Dec.* PMM addressed her tardiness and issued her another written warning. *PMM Employee Counseling Report, dated March 7, 2022*, att. A-17 to *Reiber Dec.*; *Cockroft Dec.*

## C. McNeal Again Disregards and Ignores PMM's Policies.

On Monday, February 27, 2023, McNeal again failed to follow PMM policy and procedures for requesting time off, then left the facility after her supervisor told her that her request was denied and that she could not leave because her absence would leave the clinic unsupervised. *McNeal Dep.* p. 154; *Cockroft Dec.* As background, McNeal wanted to leave work at 10:00 a.m.

---

[1] *See also Rehab Team Meeting Minutes, dated May 7, 2019*, att. A-16 to *Reiber Dec.*

on February 27, 2023, to attend an out-of-town basketball game of her high school alma matter. *McNeal Dep.,* pp. 153, 158. McNeal did not immediately submit a time off request for consideration in accordance with PMM's policies when she became aware of her planned absence or directly contact her Cockroft to ask for approval for time off.[2] *Id.* at 157-58; *Cockroft Dec.* Instead, McNeal waited just two (2) hours before she planned to leave on the morning of February 27th to place a time off request form on Cockroft's desk. *McNeal Dep.*, pp. 153, 158; *McNeal Time Off Request Form, dated February 27, 2023*, att. A-18 to *Reiber Dec.*; *Cockroft Dec.* Significantly, despite knowing that PMM's other two (2) physical therapists were already scheduled to be off work that day[3], McNeal did not contact Cockroft directly to confirm he received her tardy time off request and that her time off request was approved. *McNeal Dep.,* pp. 133-36, 115, 154-56; *Cockroft Dec.*

When Cockroft discovered McNeal's PTO request shortly after 10:00 am that day, he approached her cubicle and found her already preparing to leave the office. *McNeal Dep.*, pp. 158-59; *Cockroft Dec.* Cockroft informed McNeal that she could not leave the office for the basketball game because there would no physical therapists in the office that afternoon to supervise PTAs. *McNeal Dep.*, p. 158; *Cockroft Dec.*

Even though McNeal understood that she could not take time off without Cockroft's prior approval, McNeal maintained her failure to follow protocol should be excused because she already

---

[2]     McNeal knew at least in the early morning hours on the previous Friday, February 24, 2023, that she wanted to leave work early beginning at 10:00 a.m. on the 27th. *Id.* at pp. 133-36, 115, 154-56.

[3]     PMM's other two (2) PTs, Dee Cockroft and Christi Sims ("Sims"), had previously requested and received approval to take PTO on February 27, over one (1) month in advance. *Employee PTO Request for Dee Cockroft & Christi Sims, dated January 13, 2023*, att. A-19 to *Reiber Dec.*; *Cockroft Dec.* Dee Cockroft and Sims each submitted PTO requests to Cockroft in accordance with PMM's policies and as instructed by Cockroft multiple times in team meetings. *Id.*; *see also Paid Time Off Policy*. McNeal was aware that Dee Cockroft and Sims were both scheduled to be off that day but planned to leave work anyway. *McNeal Dep.* pp. 133-36.

rescheduled her patients for the day and had asked Dee Cockroft to "sacrifice" her properly requested and approved time off to cover for McNeal and that Dee Cockroft had agreed to do so, foregoing plans to attend her daughter's tennis match. *McNeal Dep.* at pp. 140-41, 156-57. However, Plaintiff admits she failed to request the time off from Mr. Cockroft, even though she understood that she could not take time off without his prior approval. *Id.* McNeal admitted to the EEOC that it was her "forgetfulness and misstep" in not informing Cockroft of her plan to take time off. *Id.* at pp. 202-03. Cockroft was not deterred by her excuses and reiterated that her request for time off was not approved. *Cockroft Dec.* Cockroft also reiterated that Dee Cockroft did not have authority to approve requests for time off. *McNeal Dep.* p. 203.

Remarkably, although Cockroft told McNeal that she could not leave the office because there would be no physical therapists in the office, she left anyway. *Id.* at pp. 163-64; *Cockroft Dec.* Cockroft notified PMM's Administrator, Wes Carter, and PMM's Controller, Kristin Reiber, and together they determined that PMM's Executive Committee would address the situation in a disciplinary conference with McNeal as soon as possible. *Cockroft Dec.*; *Reiber Dec.*; *Declaration of Wes Carter,* Ex. D.

**D.      McNeal Lashes Out at Her Supervisor in Front of Patients and Employees.**

Cockroft denied McNeal's request to be absent again that week to attend another high school basketball game on March 2, 2023, and returned her time off request form to her desk. *McNeal Dep.*, pp. 167–69; *Cockroft Dec.* When McNeal arrived to work the next day on February 28, McNeal confronted Cockroft outside of his office about the denied time off request, and Cockroft confirmed McNeal that her request was denied. *McNeal Dep.*, pp. 167–69; *Cockroft Dec.* Cockroft also reprimanded McNeal for leaving the clinic unsupervised the prior day after he

instructed her not to leave and he told McNeal that PMM would address her misconduct in a planned disciplinary conference. *McNeal Dep.*, pp. 169, 171; *Cockroft Dec.*

In response, McNeal directed a disrespectful rant toward Cockroft in front of patients and other PMM employees, and McNeal admits she told her supervisor that he was "unprofessional and selfish" and to go back to his office. *McNeal Dep.*, pp. 174-75; *Cockroft Dec.* McNeal testified that she "was heated" during this exchange with Cockroft, and her inappropriate conduct was personally witnessed and corroborated by employees and patients in the clinic at the time. *McNeal Dep.*, p. 177; *Investigation Notes and Witness Statements*, att. A-20 to *Reiber Dec.*; *Cockroft Dec.*; *Wes Carter Dec.* According to McNeal, she "may have raised [her] voice to let [Cockroft] know that [she] was to the point that [she] knew that [she] needed to deescalate the situation." *McNeal Dep.*, p. 199. After her outburst, Cockroft instructed McNeal to clock out and go home, but she refused. *Id.* at pp. 200-01; *Cockroft Dec.*; *Wes Carter Dec.* According to McNeal, she replied "out of frustration that [she was] not going home but that [she was] going outside." *McNeal Dep.*, p. 192.

Again, Cockroft alerted PMM's Administrator, Wes Carter, of this incident, and a call was planned for later that evening to discuss the situation with Cockroft, Wes Carter, Reiber, Dr. Benjamin Carter, PMM's President Dr. James Withers, and PMM Chief Financial Officer Becky Morris. *Cockroft Dec.*; *Wes Carter Dec.*; *Reiber Dec.*; *Declaration of Dr. Benjamin Carter*, Ex. E; *Declaration of Dr. James Withers*, Ex. F; *Declaration of Becky Morris*, Ex. G. McNeal also contacted Wes Carter to complain about Cockroft's "unprofessional and inappropriate actions" that day and to dispute the need for a disciplinary conference with PMM's executive committee. *Text Message from McNeal to Wes Carter*, Ex. H; *Wes Carter Dec.* Importantly, McNeal did not report to Wes Carter or anyone else at PMM any alleged discrimination on February 28, 2023, or

10

at any time before or after. *McNeal Dep.*, p. 109; *Wes Carter Dec.*; *Cockroft Dec.*; *Reiber Dec.*; *Dr. Benjamin Carter Dec.*; *Withers Dec.*; *Morris Dec.*;s *Email Communications with McNeal*, att. A-22 to *Reiber Dec.* Wes Carter directed McNeal to comply with her supervisor's instructions to clock out and leave the premises. *McNeal Dep.*, p. 179; *Wes Carter Dec.*

      E.      **PMM Terminates McNeal's Employment.**

Wes Carter conducted an investigation into the events of February 28 and spoke with the individuals who witnessed McNeal's confrontation with Cockroft. *Wes Carter Dec.* Ultimately, Wes Carter was unable to corroborate McNeal's claims that Cockroft had acted inappropriately and determined that McNeal had refused to remain at work on February 27 as instructed by her supervisor, left the facility after being told her request for time off was denied, and confronted her supervisor in front of patients and employees in a disrespectful and unprofessional manner. *Id.*

Cockroft (white, 55 years old at the time), Wes Carter (white, approximately 39 years and 9 months old at the time), Dr. Benjamin Carter (white, 48 years old at the time), Dr. James Withers (white, 48 years old at the time), Chief Financial Officer Becky Morris (white, 64 years old at the time), and Controller Kristin Reiber, Controller (white, 41 years old at the time) collectively made the decision to terminate McNeal's employment. *Cockroft Dec.*; *Wes Carter Dec.*; *Reiber Dec.*; *Dr. Benjamin Carter Dec.*; *Withers Dec.*; *Morris Dec.* On Wednesday, March 1, McNeal attended a meeting with Wes Carter, Cockroft, and Reiber, where she was informed of her termination. *McNeal Dep.*, at pp. 185-187; 193; *Wes Carter Dec.*; *Cockroft Dec.*; *Reiber Dec.* PMM terminated McNeal's employment due multiple to policy violations, unprofessional conduct and insubordination, arising from the events on February 27th and 28th.[4] *PMM Employee Counseling*

---

[4]      After McNeal's discharge, other employees on PMM's staff absorbed McNeal's job duties. *Cockroft Dec.* It was only after another provider voluntarily resigned several months later that PMM decided to bring on another full-time PT and offered the position to Haley Kuhn (white, over 40 years old). *Id.* Kuhn declined the offer, and PMM ultimately hired Carlie Rutledge (white, less than 40 years old) in September 2023. *Id.*

*Report, dated March 1, 2023*, att. A-21 to *Reiber Dec.*; *Cockroft Dec.*; *Wes Carter Dec.*; *Reiber Dec.*; *Dr. Benjamin Carter Dec.*; *Withers Dec.*; *Morris Dec.*

In response to the termination of her employment, McNeal filed two charges of discrimination with the EEOC and later this lawsuit, alleging PMM discriminated against her because of her race and age, and retaliated against her in violation of Title VII. *See Excerpts of Equal Employment Opportunity Commission Investigation File*, Ex. I. For the reasons set forth below, judgment should be entered in favor of PMM as a matter of law.

## LEGAL ARGUMENT

### I.      Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). On a motion for summary judgment, the movant's initial burden requires a showing that no genuine issue of material fact exists. *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 325 (1986). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 150 (2000). However, there is no genuine issue of material fact "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W & T Offshore, Inc.,* 626 F.3d 789, 793 (5th Cir. 2010). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

## II.     McNeal's Discrimination Claims Fail as a Matter of Law.

Despite ample evidence to the contrary, McNeal claims PMM terminated her employment because she is Black and because she was 43 years old at the time.  While "[a] plaintiff may prove discrimination through direct evidence or circumstantial evidence, or both[,]"[5] Plaintiff offers no evidence whatsoever indicating that the group of individuals who decided to terminate her employment held any bias against her due to these protected characteristics or that her race or age played in any part in their decision. *McNeal Dep.*, pp. 211-12, 225.

Because Plaintiff can offer no direct evidence of discrimination, the familiar McDonnell-Douglas burden-shifting framework applies.[6]  Thus, to avoid summary judgment, McNeal must rely on circumstantial evidence to put forth a prima facie case of intentional discrimination. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Only if she is able to do so is PMM then

---

[5]     *Odubela v. Exxon Mobil Corp.*, 2018 WL 2715144, at *3 (5th Cir. June 5, 2018) (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)).

[6]     *Fife v. Vicksburg Healthcare, LLC*, 945 F. Supp. 2d 721, 732 (S.D. Miss. 2013); *Mengistu v. Miss. Valley State Univ.*, 2017 WL 3880319, at *2 n.2 (N.D. Miss. Sept. 5, 2017); *Giles v. Shaw Sch. Dist.*, 655 F. App'x 998, 1002 (5th Cir. 2016).

required to rebut the presumption created by McNeal's prima facie case by setting forth a legitimate, nondiscriminatory reason for terminating her employment. *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997) (citing *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)). Notably, this is a burden of production, not persuasion, on PMM's part, and it "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

Once PMM articulates a legitimate, nondiscriminatory reason for its actions, "the burden shifts back to [Plaintiff] to prove either that [PMM's] proffered reason was not true—but was instead a pretext for [unlawful] discrimination—or that, even if [PMM's] reason is true, [s]he was terminated because of [her protected characteristic(s)]." *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)); *see also St. Mary's*, 509 U.S. at 507-08. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

### A. McNeal Cannot Demonstrate Any Genuine Issue of Material Fact to Satisfy Her Burden to Prove Age Discrimination Under the ADEA.

#### i. McNeal's High Burden to Prove Age Discrimination.

McNeal alleges PMM intentionally discriminated against her because of her age-43 years old when terminated. The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of

14

employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To meet her initial prima facie burden, McNeal must show she was: (1) discharged; (2) qualified for the position; (3) within the protected class at the time of the discharge; and (4) "either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of [her] age." *Baker v. American Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005).

Importantly, to sustain a claim of discriminatory termination based on age, McNeal "must prove by a preponderance of the evidence . . . , that age was the 'but-for' cause of the challenged employer decision." *Moss*, 610 at 922 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)). Moreover, "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross*, 557 U.S. at 175 ("Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."). "To establish a disparate-treatment claim under the plain language of the ADEA, therefore, [Plaintiff] must prove that age was the 'but-for' cause of [PMM's] decision." *Gross*, 129 U.S. at 176.

McNeal admits she can recall no derogatory comments made about her age by anyone at PMM during her employment. *McNeal Dep.*, p. 225.

> ii.  **McNeal Cannot Satisfy Her Prima Facie Burden to Prove Age Discrimination.**

McNeal cannot satisfy the fourth requirement of her prima facie burden. McNeal claims she was discriminated against based on age solely because PMM moved PTA Chelsea Roebuck from a PRN status to a regular PTA position shortly after McNeal's termination. *Id.* at pp. 215-16. But McNeal does not dispute that Roebuck occupied a different position, that Roebuck was not a PT, and that Roebuck was not able to perform all of the treatments, services, and duties required

15

of the full-time PT position,[7] unlike McNeal who holds a doctorate degree in physical therapy. *Id.* at pp. 41, 216.

PMM did not replace McNeal after her discharge; rather, other PMM employees absorbed McNeal's job duties. *Cockroft Dec*; *Wes Carter Dec.* It was only after another provider voluntarily resigned that PMM decided to bring on an additional PT and offered the position to a PT candidate who is older than McNeal. Haley Kuhn (46 Years old) was offered the position but declined. *Cockroft Dec*; *Wes Carter Dec.* Kuhn is not only a member of the protected class, she is also older than McNeal. *Cockroft Dec*; *Wes Carter Dec.* A plaintiff who is replaced by an older worker does not receive the inference of discrimination that the prima facie case affords. *Bienkowski v. Am. Airlines, Inc.,* 851 F.2d 1503, 1506 (5th Cir. 1988). Ultimately, PMM hired an additional PT, Carlie Rutledge (White, 28 years old at the time of hire), on September 11, 2023 – more than six (6) months after McNeal's discharge. Courts have determined that hiring an individual six (6) months after a plaintiff's termination is too remote to be considered a replacement for purposes of a prima facie case. *See, e.g., Hauser v. Schneider Elec. Sys. USA, Inc.*, 2019 WL 13251124 (S.D. Tex. May 29, 2019); *McDaniel v. Wal-Mart Stores, Inc.*, 94 F.Supp.2d 878, 882 (N.D. Ohio 2000); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1422 (9th Cir. 1990).

McNeal cannot satisfy her prima facie burden, and her claim fails as a matter of law and should be dismissed.

### iii. McNeal Cannot Satisfy Her High Burden to Show That "But For" Her Age PMM Would Not Have Terminated Her Employment for Her Policy Violations and Misconduct.

Even if McNeal could make out a prima facie case of age discrimination, she cannot rebut PMM's legitimate, nondiscriminatory reasons for terminating her employment and cannot satisfy

---

[7] *See* 15 MISS. CODE. R. 16-1-46.39.2 (describing the duties of a Physical Therapist in Mississippi).

her ultimate burden to "prove that age was the 'but-for' cause of [PMM's] decision." *Gross*, 129 U.S. at 176. PMM clearly has satisfied its burden to show it discharged McNeal for legitimate non-discriminatory reasons - PMM discharged McNeal because she refused to perform work as instructed by her supervisor, left the facility after being told that her request for time off was not approved, and subsequently and loudly argued with her supervisor in front of patients and other PMM employees in a disrespectful and unprofessional manner. *Reiber Dec*; *Cockroft Dec.*; *Wes Carter Dec.*; *Dr. Benjamin Carter Dec.*; *Dr. James Withers Dec.*; *Becky Morris Dec.*

As established herein, McNeal cannot show that PMM's reasons for terminating her were false and that age discrimination was the actual reason for her termination. McNeal admits she has no other evidence supporting her allegations of intentional age discrimination, other than her belief that a younger PTA replaced her. In fact, according to McNeal's sworn statement under penalty of perjury in her first Charge of Discrimination, McNeal did not believe her age was the reason for her termination of employment. *Excerpts of Equal Employment Opportunity Commission Investigation File.* Moreover, McNeal admits that at the time of her termination she did not believe PMM had discriminated against her because of her age, and she never reported to anyone that she felt discriminated against because of her age during her employment, at the time of her termination or in the months after. *McNeal Dep.*, p. 108; 213; *See Email Communications with McNeal*. Defendant incorporates its argument set forth in Sections II(B)(ii) below that demonstrate that McNeal cannot show pretext.

The age of the decisionmakers also undercuts McNeal's age discrimination claim. Five out of six of the individuals who collectively made the decision to terminate her employment were also members of the same protected class (i.e., were over 40 years old at the time) and **four out of six of the decisionmakers are older than Plaintiff,** and the youngest decisionmaker involved in terminating Plaintiff's employment was only just over three years younger than Plaintiff. *Reiber*

*Dec.* A collective decision made by individuals who are older than McNeal clearly negates any inference of discriminatory intent.[8] *See Strong v. Univ. Healthcare Sys., L.L.C.,* 482 F.3d 802, 806 n.2 (5th Cir. 2007); *Nomani v. Star Furniture Co*., 2016 WL 4192057, at *10 (S.D. Tex. Aug. 8, 2016); *Jefferson v. Hosp. Partners of Am., Inc*., 2009 WL 8758090, at *17 (S.D. Tex. May 18, 2009), *aff'd sub nom. Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485 (5th Cir. 2010).

McNeal cannot satisfy her ultimate burden to "prove that age was the 'but-for' cause of [PMM's] decision." *Gross*, 129 U.S. at 176.  McNeal's subjective belief that PMM terminated her employment after she violated numerous policies because of her age is not sufficient for a court to find that discrimination occurred. *See Roberson v. Alltel Info. Servs*., 373 F.3d 647, 654 (5th Cir. 2004). Summary judgement should be granted on McNeal's age discrimination claim.

### B.  McNeal Cannot Demonstrate Any Genuine Issue of Material Fact to Satisfy Her Burden to Prove Race Discrimination Under Either Title VII or Section 1981.

At the same time McNeal claims PMM would not have terminated her employment but for her age, she also alleges PMM terminated her employment because of her race in violation of Title VII and 42 U.S.C. § 1981. McNeal testified she believed she was discriminated due to her race because she was "the only professional, black professional there." *McNeal Dep.*, p. 211.  When asked if there were any other instances of race discrimination during her employment at PMM, McNeal replied "no." *Id.* at p. 212.

### i.  McNeal Cannot Establish a Prima Facie Case of Unlawful Race Discrimination.

McNeal likewise has no direct evidence of race discrimination. *Id.* at pp. 211-12, 230. Therefore, she must prove her race discrimination claim using the McDonnell Douglas burden-

---

[8]     As the First Circuit explained under similar facts, demonstrating that the decisionmaker is older than Plaintiff "makes any inference of animosity towards age on this evidence dubious at best." *Greenberg v. Union Camp Corp.*, 48 F.3d 22, 29 (1st Cir. 1995) (decisionmaker, "himself, was five years older than Greenberg").

shifting framework set forth above.[9]

Here, to establish a prima facie case, McNeal must demonstrate: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was subjected to an adverse employment action; and (4) she was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably. *Wiseman v. New Breed Logistics, Inc.,* 72 F. Supp. 3d 672, 679 (N.D. Miss. 2014) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007)); *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006).

McNeal cannot satisfy the fourth element of her prima facie case and for this reason alone, her claim fails. McNeal cannot show that she was replaced by someone of another race and cannot identify any proper comparators, which is ultimately fatal to her claims. *See Wallace v. Methodist Dist. Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

As discussed above, the fact that PMM ultimately brought on an additional PT more than six (6) months after McNeal's discharge – after the voluntary resignation of another provider – does not show that PMM "replaced" McNeal or that PMM intentionally discriminated against her because of her race. *See McDaniel*, 94 F.Supp.2d at 882; *Rose*, 902 F.2d at 1422. Moreover, McNeal's objections to PMM moving Roebuck from PRN status to a regular PTA position shortly after McNeal's termination are irrelevant and immaterial to her prima facie case as it is undisputed Roebuck and McNeal occupied different positions with PMM. *McNeal Dep.*, p. 216; *Brooks-Joseph v. Cty. of Seattle*, 697 F.Supp.3d 1085, 1101-02 (W.D. Wash. 2023) (finding that plaintiff failed to demonstrate that she was similarly situated to her replaced because they maintained different job titles); *Penkian v. Bear Stearns & Co.*, 1992 WL 390705 at *3 (N.D. Cal. Aug. 18,

---

[9]     Courts apply the McDonnell Douglas burden-shifting framework in analyzing race discrimination claims under both Title VII and 42 U.S.C. § 1981. *Johnson v. Manpower Prof. Services, Inc.*, 442 F. App'x 977, 981 (5th Cir. 2011).

1992) (noting that Plaintiff failed to establish a prima facie case where Plaintiff's alleged replacement was hired 8 months before Plaintiff's termination and had different job duties). Thus, McNeal cannot show PMM replaced her position with a non-African-American PT.

In addition, McNeal cannot identify any other similarly situated employees of a different race who were treated more favorably. To satisfy the "similarly situated" prong of her prima facie case, McNeal must establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). "A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018). McNeal must show that a comparator's conduct is "nearly identical." *Lee*, 574 F.3d at 260 n.25. McNeal admits there is no other PT of a different race who retained their job after refusing to perform work as instructed by their supervisor, abruptly leaving the facility after being told that their request for time off was not approved, and subsequently and loudly arguing with their supervisor in front of patients in a disrespectful and unprofessional manner. *McNeal Dep.*, pp. 106-108, 212. McNeal is unable to identify any PT (or other employee) who engaged in any of the separate instances of misconduct similar to McNeal's conduct on February 27-28. *Id.* at p. 212. McNeal cannot, and has not, identified in her EEOC charges, her Complaint, her sworn discovery responses, or her deposition testimony any similarly situated comparator that purportedly engaged in nearly identical behavior as McNeal. Because McNeal cannot satisfy her prima facie burden, her race discrimination claims should be dismissed.

     **ii.    McNeal Cannot Demonstrate That PMM's Legitimate, Nondiscriminatory Reasons for Terminating Her Employment Are Merely Pretext for Unlawful Race Discrimination.**

Even if McNeal could make out a prima facie case of race discrimination (she cannot), McNeal has produced no evidence rebutting PMM's legitimate, non-discriminatory reasons for terminating her employment. McNeal may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "But a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Holliday v. Commonwealth Brands, Inc.*, 483 F. App'x 917, 921 (5th Cir. 2012) (quoting *Hicks*, 509 U.S. at 515 (emphasis added)). Of course, "[t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

PMM terminated McNeal for refusing to perform work as instructed by her supervisor, leaving the facility after being told that her request for time off was not approved, and subsequently and loudly arguing with her supervisor in front of patients and other PMM employees in a disrespectful and unprofessional manner. *PMM Employee Counseling Report, dated March 1, 2023*. Certainly these are legitimate, non-discriminatory reasons for termination, and McNeal cannot establish pretext. *See Aldrup v. Caldera*, 274 F.3d 282 (5th Cir. 2001) ("Insubordination was sufficient nondiscriminatory reason for . . . termination of Title VII plaintiff's employment"); *Chaney v. New Orleans Pub. Facility Mgmt.*, 179 F.3d 164, 167 (5th Cir. 1999). McNeal admits she left work after her supervisor told her that her time off request was denied and that she "was "heated" with her supervisor the next day, called him "unprofessional and selfish," and told him to go back to his office in front of other employees and patients. *McNeal Dep.*, pp. 174-75, 177; *Investigation Notes and*

*Witness Statements.*  Also, McNeal admits that after her outburst, Cockroft instructed McNeal to clock out and go home, but she refused. *McNeal Dep*., pp. 200-01.  McNeal testified about her conduct:

> Q.      Okay.  And you would agree that it's not appropriate to have a loud verbal altercation with your supervisor in front of patients, correct?
>
> A.      I would agree that that would be the least thing that you would want.

*Id.* at. p. 201.

Moreover, PMM's decision to terminate McNeal's employment was made collectively by multiple levels of senior management after a full investigation into her misconduct. *Wes Carter Dec.* A collective decision made by individuals negates any inference of discriminatory intent. *See Strong,* 482 F.3d at 806 n.2 (noting that collective firing decision is less susceptible to conclusion that it was influenced by questionable motives); *Nomani*, 2016 WL 4192057, at *10  (fact that multiple levels of management concurred in firing decision bolsters finding that employer acted in good faith); *Jefferson*, 2009 WL 8758090, at *17 ("A collective decision-making process negates an inference of discrimination.").

Essentially, McNeal contends that PMM's disciplinary decisions were too harsh and that her misconduct should be excused.  However, McNeal cannot contest that PMM's panel of decisionmakers believed in good faith that she violated multiple company policies. *See LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (where an employment decision based on an employer's good faith belief that the employee violated its policies, asserted reason for the decision is not pretext).  Moreover, even if the Court were to agree that PMM's determination that McNeal's disregard for PMM policies and procedures rose to the terminable level was too harsh, the principle that the courts should not sit as "super-personnel" departments in reviewing employment decisions applies directly here. *See Alexander v. Wis. Dep't of Health & Family Servs.*, 263 F.3d 673, 683 (7th Cir. 2001) (federal courts are not to act as "super-personnel

boards"). Here, McNeal offers no evidence to suggest that PMM's reasons for terminating her were false or unworthy of credence other than her own subjective belief. As the Fifth Circuit has long held, "a plaintiff cannot merely rely on his subjective belief that discrimination has occurred" to establish pretext. *Hoang v. Microsemi Corp.*, 2023 WL 2346244, at *4 (5th Cir. Mar. 3, 2023) (quoting *Pilcher v. Cont'l Elecs. Corp.*, 121 F.3d 703 (5th Cir. 1997)).

Moreover, as discussed above, McNeal cannot show pretext as she cannot identify a non-African American who was treated differently under circumstances "nearly identical" to hers. *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). McNeal cannot identify any proper comparators, and her claim of race-based discrimination fails as a matter of law. Accordingly, summary judgment is appropriate, and McNeal's claims of race discrimination should be dismissed.

### iii. McNeal Cannot Meet the Heightened Causation Standard Required to Sustain Her Claims Under Section 1981.

Critically, with regard to her Section 1981 claim, McNeal must prove her race was the "but for" cause of her employment termination in order to satisfy her ultimate burden to prove PMM intentionally discriminated against McNeal because of her race. *Hoang*, 2023 WL 2346244, at *4 (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020)); *Abdallah v. Mesa Air Grp., Inc*., 83 F.4th 1006, 1018 (5th Cir. 2023).

McNeal cannot demonstrate that, but for her race, PMM would not have terminated her employment after she refused to perform work as instructed by her supervisor, left the facility after being told that her request for time off was not approved, and subsequently and loudly argued with her supervisor in front of patients and other PMM employees in a disrespectful and unprofessional manner. Therefore, her claim of discrimination under Section 1981 fails as a matter of law and must be dismissed.

23

### III.    McNeal's Retaliation Claim Likewise Fails as a Matter of Law.

Remarkably, McNeal not only claims that her employment would not have been terminated but for her age, and but for her race, she also asserts a third "but for" cause for her termination – that PMM allegedly retaliated against her for nonexistent protected conduct in violation of Title VII and Section 1981. However, McNeal admits she never raised any concerns or allegations of any purported discrimination prior to her discharge, which is fatal to her retaliation claim. *McNeal Dep.*, pp. 109, 211.

### A.    McNeal's Burden to Prove Retaliation Under Title VII and Section 1981.

An individual has engaged in a protected activity when she "opposed any practice made an unlawful employment practice by this [Title], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To meet her initial prima facie burden to prove her claim of unlawful retaliation, McNeal must prove that (1) she engaged in a protected activity, (2) PMM took an adverse employment action against her, and (3) there was a "but-for" causal connection between her engagement in the protected activity and the adverse employment action. *Harville v. Cty. Of Houston, Miss.*, 945 F.3d 870 (5th Cir. 2019). The same standard applies for retaliation claims under Title VII and 42 U.S.C. § 1981. *Hypolite v. Cty. Of Houston, Tex.*, 493 F. App'x 597, 602 (5th Cir. 2012).

Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate reason for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). If McNeal establishes a prima facie case of retaliation, the burden shifts to PMM to present proof of a legitimate, non-retaliatory purpose for its actions. *McDonnell*, 411 U.S. at 802.

If PMM carries its burden of production, McNeal then must show that the adverse employment action would not have occurred "but for" the protected conduct. *University of Texas Southeastern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *Strong v. Univ. Healthcare Sys., LLC,* 482 F.3d 802, 806 (5th Cir. 2007). Although this portion of the analysis appears similar to the causal link step of the prima facie case, McNeal's burden here is more stringent. *Medina v. Ramsey Steel Co*., 238 F.3d 674, 85 (5th Cir. 2001).

**B. McNeal Cannot Establish a Prima Facie Case of Unlawful Retaliation.**

McNeal cannot satisfy the first and third elements of her prima facie case because she engaged in no protected activity, and she cannot show that "but-for" any nonexistent protected activity, PMM would not have terminated her employment. As to the first element, McNeal admits she did not allege any discrimination or harassment based on race or age at any time during her employment. *McNeal Dep.*, pp. 109, 211, 225. When asked what she thought PMM's reason was for retaliating against her, McNeal testified that she believed PMM's decision to terminate her was because of her race. *Id.* at p. 211. Because McNeal did not engage in any protected conduct, her retaliation claims under Title VII and Section 1981 fail. *Brown v. United Parcel Serv., Inc.,* 406 F. App'x 837, 840 (5th Cir.2010), *abrogated on other grounds by Reeves*, 530 U.S. at 134; *see, e.g.*, *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair . . . is not protected activity."); *Harris–Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim where plaintiff never "specifically complained of racial or sexual harassment, only harassment"); *Wynn v. Miss. Dept. of Human Servs.,* 2011 WL 3423142, 5 (S.D. Miss. Aug. 4, 2011). Because McNeal engaged in no protected activity, her retaliation claim should be dismissed on this ground alone.

25

Additionally, as to the third prima facie element, McNeal cannot demonstrate any causal connection between any such nonexistent alleged activity and her termination, much less satisfy her high burden to show that she would not have been separated "but for" her alleged protected activity. *See Alack v. Beau Rivage Resorts, Inc.*, 286 F. Supp. 2d 771, 773-74 (S.D. Miss. Apr. 23, 2003) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) and *Long v. Eastview College*, 88 F.3d 300, 308 (5th Cir. 1996). Because McNeal cannot satisfy her prima facie burden for retaliation, the Court should dismiss her retaliation claim. Even if McNeal could satisfy her prima facie case for retaliation, which she cannot, she cannot satisfy her ultimate burden to show that, but for her nonexistent protected activity, PMM would not have terminated her employment for her multiple and admitted policy violations, misconduct and insubordination. In light of McNeal's belligerent, disrespectful and unprofessional conduct, McNeal cannot prove that she would not have been terminated "but for" her prior alleged (nonexistent) complaint. *Nassar*, 133 S. Ct. at 2533.

## CONCLUSION

Based on the undisputed material facts and authority applicable to this cause of action, as fully argued herein, there are no genuine issues of material fact that necessitate a trial and PMM is entitled to judgment as a matter of law. Accordingly, PMM respectfully requests summary judgment in its favor on all claims under Rule 56 of the Federal Rules of Civil Procedure and dismissal of this action in its entirety with prejudice.

THIS, the 4th day of October, 2024.

Respectfully submitted,

**PREMIER MEDICAL MANAGEMENT OF MISSISSIPPI, INC., DEFENDANT**

26

By:     /s/ Robin Banck Taylor
        Robin Banck Taylor (MS Bar No. 100195)
        Blythe K. Lollar (MS Bar No. 104554)

**OF COUNSEL:**

Robin Banck Taylor (MS Bar No. 100195)
Robin.Taylor@butlersnow.com
Blythe K. Lollar (MS Bar No. 104554)
Blythe.Lollar@butlersnow.com
BUTLER │ SNOW LLP
1020 Highland Colony Parkway – Suite 1400
Ridgeland, Mississippi 39157
Telephone: (601) 948-5711
Facsimile: (601) 985-4500

## CERTIFICATE OF SERVICE

I, Robin Banck Taylor, one of the attorneys for Defendant, do hereby certify that I have this day electronically filed a true and correct copy of the foregoing Memorandum of Authorities in Support of its Motion for Summary Judgment with the Clerk of Court using the ECF electronic court-filing system, which sent notification of such filing to counsel of record as follows:

> Louis H, Watson, Jr.
> Nick Norris
> WATSON & NORRIS, PLLC
> 4209 Lakeland Drive #365
> Flowood, MS  39232-9212
> louis@watsonnorris.com
> nick@watsonnorris.com

*Attorneys for Plaintiff*

So certified on this, the 4th day of October, 2024.

        /s/ Robin Banck Taylor
        ROBIN BANCK TAYLOR