**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**TINA MCNEAL**                                                           **PLAINTIFF**

**v.**                                                   **CIVIL ACTION NO.: 4:23-cv-180-DMB-DAS**

**PREMIER MEDICAL MANAGEMENT**                          **DEFENDANT**
**OF MISSISSIPPI, INC.**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS RESPONSE TO DEFENDANT'S
MOTION *IN LIMINE* TO EXCLUDE BROAD ALLEGATIONS OF AGE OR RACE
DISCRIMINATION AND EVIDENCE OF UNRELATED INCIDENTS AND
INDIVIDUALS NOT SIMILARLY SITUATED**

**I.      INTRODUCTION**

Plaintiff Tina McNeal ("McNeal") respectfully submits this response in opposition

to Defendant Premier Medical Management of Mississippi, Inc.'s ("PMM") Motion *in*

*Limine* to exclude broad allegations of age or race discrimination and evidence of

unrelated incidents and individuals not similarly situated. Defendant's motion should be

denied, as such evidence is highly relevant to the claims at issue in this case, and its

exclusion would severely limit Plaintiff's ability to establish a complete record of

discriminatory treatment. Evidence of disparate treatment, including comparisons to

similarly situated employees, is crucial to proving pretext and discriminatory intent,

which are central to Plaintiff's race and age discrimination claims.

**II.      LEGAL STANDARD**

A motion *in limine* seeks to exclude evidence prior to trial. However, the Court's

discretion to exclude evidence is limited, particularly in discrimination cases where

courts generally err on the side of admitting relevant evidence. Federal Rule of

Evidence ("FRE") 401 states that evidence is relevant if it makes a fact of consequence

more or less probable. The mere fact that evidence may be prejudicial does not

automatically make it inadmissible; instead, the Court must weigh the probative value of the evidence against any potential unfair prejudice. *See* Fed. R. Evid. 403. Evidence of discriminatory practices, even if related to other employees, can often support a plaintiff's claim of discriminatory intent or pretext.

## III.    ARGUMENT

### A. Relevance of Evidence of Discriminatory Pattern and Practice

Contrary to Defendant's assertion, evidence of PMM's broader pattern or practice of discrimination is highly relevant in this case. While Plaintiff has not formally pleaded a "pattern and practice" claim of discrimination, the existence of such a pattern is still crucial to understanding Defendant's discriminatory intent and to demonstrating the broader context of Plaintiff's termination. Evidence of a "pattern and practice" of discrimination can significantly bolster Plaintiff's claims by showing that her termination was not an isolated incident but part of a wider discriminatory practice at PMM. This evidence would support the inference that Plaintiff was treated unfairly due to her age or race.

As the Fifth Circuit has held in *Wyvill v. United Companies Life Ins. Co.*, evidence of a pattern or practice of discrimination may be admissible to show that a decision was motivated by impermissible discrimination, even when such a claim is not formally pleaded. *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000). In *Wyvill*, the court clarified that while evidence of a pattern and practice of discrimination is typically associated with systemic claims, it can also be relevant in individual discrimination cases to show the employer's intent. *Id.* Evidence of consistent discriminatory behavior can help establish discriminatory intent, and it may strengthen

2

Plaintiff's argument that the employer's stated reason for an adverse employment action is pretextual.

In this case, Plaintiff has alleged race and age discrimination, and although she has not specifically pleaded a "pattern and practice" theory, evidence suggesting that PMM engaged in a pattern of discriminatory behavior towards similarly situated employees based on race or age is highly relevant. If Plaintiff can demonstrate that employees of her age group or race were routinely subjected to unfair treatment or terminated under similar circumstances, this could provide strong evidence that her termination was not an isolated event but part of a broader discriminatory practice within PMM.

This evidence is necessary for Plaintiff to establish the context of her termination. The introduction of such evidence would help show that PMM's actions towards Plaintiff were consistent with a larger, unlawful pattern of discrimination, reinforcing her claims that the employer's proffered reason for her termination is pretextual. As *Wyvill* illustrates, such evidence helps demonstrate that the employer's actions were not based on legitimate, non-discriminatory reasons but rather on an unlawful, discriminatory motive.

Therefore, Plaintiff respectfully asserts that evidence regarding PMM's broader practices of discrimination is central to her case. Excluding such evidence would severely limit Plaintiff's ability to fully present her claims of discrimination and would prevent the jury from understanding the full context of the employer's behavior.

**B. Pattern and Practice Evidence as Permissible in Establishing Pretext**

The Court may also consider evidence of a pattern or practice of discrimination to demonstrate that PMM's proffered reasons for Plaintiff's termination are pretextual. As the Supreme Court articulated in *Reeves v. Sanderson Plumbing Products, Inc*., a plaintiff can use evidence of discriminatory actions toward other employees to demonstrate that the employer's stated reason for firing the plaintiff is not credible. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 147 (2000). This type of evidence is critical because it undermines the employer's claim that the adverse employment action was taken for legitimate, non-discriminatory reasons. Even if Plaintiff has not specifically alleged a "pattern and practice" of discrimination, evidence suggesting that similarly situated employees were treated differently under comparable circumstances can be highly relevant in showing that PMM's actions toward Plaintiff were not based on an objective, consistent standard.

In *Reeves*, the Court held that a plaintiff can rely on circumstantial evidence, including evidence of disparate treatment of other employees, to challenge the employer's stated reason for an adverse action. *Reeves*, 530 U.S. at 147.The Court explained that if a plaintiff can present sufficient evidence to suggest that the employer's explanation is unworthy of belief, this may allow the jury to infer that discrimination was the true reason for the adverse employment decision. *Id*.

While Plaintiff has not formally alleged a "pattern and practice" theory, the introduction of evidence that PMM has consistently treated employees differently based on race or age—especially in situations similar to Plaintiff's—can provide significant support to the argument that PMM's explanation for Plaintiff's termination is pretextual. As Reeves demonstrates, evidence showing that similarly situated employees were

4

subjected to different treatment under similar circumstances helps establish that the employer's proffered reasons are not credible and that discrimination may have played a role in the decision-making process.

Moreover, as the Fifth Circuit has recognized in *Wyvill,* evidence of how other employees were treated can be relevant in showing pretext, but only when those employees are similarly situated to the plaintiff. *Wyvill*, 212 F.3d at 302. The court emphasized that such evidence could reveal inconsistencies in the employer's stated reasons for actions taken against similarly situated employees, which is crucial in determining whether the employer's reasons are actually pretextual. *Id.*

The admissibility of such evidence is consistent with the principle that circumstantial evidence can be used to establish pretext. As *McDonnell Douglas Corp. v. Green*, and its progeny have shown, a plaintiff does not need direct evidence of discrimination to prevail; circumstantial evidence, such as evidence of how similarly situated employees were treated differently, can be just as powerful in showing that the employer's reasons for an adverse action are a mere pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

In light of these precedents, the Court should permit Plaintiff to present evidence regarding the treatment of other employees to establish pretext. Evidence of PMM's treatment of other employees under similar circumstances can demonstrate that the company's stated reason for Plaintiff's termination—her alleged misconduct—was not applied consistently or uniformly. If other employees engaged in similar or even worse conduct but were not terminated, it strongly suggests that Plaintiff's termination was not

based on legitimate business concerns but rather on discriminatory animus based on race or age.

Therefore, Plaintiff respectfully asserts that evidence of a pattern or practice of discriminatory behavior should be considered by the Court, as it is crucial to demonstrating that PMM's proffered reason for her termination is pretextual. The introduction of such evidence will allow Plaintiff to challenge the credibility of PMM's justification and provide the jury with a fuller understanding of the employer's actions, ensuring a fair and just trial.

### C. Evidence of Other Employees Not Similarly Situated but Relevant to Establishing Discriminatory Animus

In *Wyvill*, the Fifth Circuit allowed the introduction of evidence about other employees' treatment, but it emphasized that such evidence must come from employees who are "similarly situated" to the plaintiff. *Wyvill*, 212 F.3d at 302. The court clarified that when employees are not similarly situated in all relevant respects, their treatment is not necessarily admissible to show discriminatory animus or pretext. However, the *Wyvill* court recognized that, in certain circumstances, evidence of other employees' treatment can be relevant to help show the employer's discriminatory motive or the inconsistent application of its policies.

While the employees in question may not be "similarly situated" to Plaintiff in every respect, evidence regarding how PMM treated them differently from Plaintiff can still serve as valuable circumstantial evidence of discriminatory intent. This is especially true when such evidence reveals a pattern of disparate treatment that supports Plaintiff's claims of discrimination based on race or age. For example, if Plaintiff can show that other employees, who were similarly situated in terms of position,

6

responsibilities, or alleged misconduct, were treated more leniently, this would strengthen her argument that PMM discriminated against her based on her race and/or age.

Moreover, the Fifth Circuit has consistently held that evidence of disparate treatment—even if it involves employees who are not perfectly "similarly situated"—can still be relevant in showing pretext or discriminatory animus. For instance, in H*offman v. Baylor Health Care System*, the court ruled that for such evidence to be relevant, the employees compared to the plaintiff must be "nearly identical" in all relevant respects, including the nature of their job duties and the circumstances leading to the adverse employment action. H*offman v. Baylor Health Care System*, 597 Fed. Appx. 231, 233 (5th Cir. 2015). In *Hoffman*, the court determined that the employees were not similarly situated because they worked in different departments and had different job responsibilities. *Id.* As a result, evidence of how these employees were treated differently was not admissible to establish pretext in the plaintiff's discrimination claim.

Additionally, in *Martin v. Budget Rent-A-Car Sys. Inc.*, the court reiterated that the comparison between employees need not be "identical" but rather "nearly identical" in relevant respects. *Martin v. Budget Rent-A-Car Sys. Inc.*, 432 Fed. Appx. 407, 410 (5th Cir. 2011). This includes factors such as job duties, performance, and the specific reasons for the alleged misconduct. In *Martin*, the Fifth Circuit found that evidence of another employee being treated more favorably, despite engaging in similar misconduct, was relevant in assessing whether the employer's stated reasons for the plaintiff's termination were credible or pretextual.

The principle that similarly situated employees need not be identical in every respect but merely similar in ways that are pertinent to the discrimination claim is also reflected in *Atterberry v. City of Laurel*, 401 Fed. Appx. 869, 871 (5th Cir. 2010). The court held that for purposes of proving discriminatory animus, a comparison can be drawn between employees who share similar job responsibilities, work environments, and who are subject to the same decisionmakers, even if there are some distinctions between them. *Id.*

In this case, if Plaintiff can demonstrate that PMM treated employees who were similarly situated to her—those who shared her job duties or engaged in comparable misconduct—more leniently, it could show that PMM's actions toward Plaintiff were motivated by a discriminatory animus. Discriminatory treatment of similarly situated employees could raise an inference that the employer's reasons for terminating Plaintiff were not genuine but were instead a pretext for discrimination based on her race or age.

Therefore, while the employees in question may not be "identical" in every respect, evidence of how PMM treated them differently under similar circumstances is highly relevant. It can show inconsistencies in the application of PMM's policies, helping to establish discriminatory animus or pretext. This evidence allows Plaintiff to demonstrate that the reasons given for her termination were not legitimate business reasons, but rather motivated by discriminatory bias, which is central to proving her case.

**D. "Me Too" Evidence and Improper Standard in Defendant's Motion**

In the Fifth Circuit, the introduction of "Me Too" evidence—testimony about other employees who have experienced similar discriminatory treatment—is a critical tool for demonstrating a pattern of discrimination. Courts have long recognized the value of such evidence in providing context to the plaintiff's claims, even if those other employees are not directly involved in the plaintiff's specific situation. In *Sprint/United Management Co. v. Mendelsohn*, the Supreme Court held that evidence of prior discriminatory acts toward other employees may be admissible to show that an employer's actions toward the plaintiff were motivated by discriminatory animus. *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008). Although *Mendelsohn* itself did not establish a categorical rule for the admissibility of "Me Too" evidence, it clarified that the admissibility of such evidence depends on its relevance to the plaintiff's claims and its probative value in establishing a broader pattern of discrimination.

The Fifth Circuit has consistently permitted the introduction of "Me Too" evidence in discrimination cases to demonstrate discriminatory intent, even when the evidence is not directly related to the specific claims of the plaintiff. For example, in *Wyvill*, the court held that testimony about how other employees were treated can be relevant to show the employer's intent and to challenge the credibility of the employer's stated reasons for the adverse employment action. *Wyvill*, 212 F.3d at 302. The Fifth Circuit recognized that such evidence is especially valuable in situations where the employer's motive for taking adverse actions is in dispute, such as in cases of alleged race or age discrimination.

In this case, Defendant PMM attempts to argue that Plaintiff's case should be viewed in isolation and that evidence regarding the treatment of other employees is irrelevant unless it directly involves similarly situated individuals. However, this argument ignores the reality that discriminatory animus often manifests across an organization or department, and that evidence of broader patterns of discrimination is essential to understanding the true nature of the employer's conduct. As the Fifth Circuit has emphasized, "Me Too" evidence helps establish a context in which a single act of discrimination—such as the termination of Plaintiff McNeal—can be more meaningfully understood. It is this context that demonstrates that the employer's actions were not merely isolated incidents, but part of a consistent, ongoing pattern of discriminatory behavior.

Moreover, the Defendant's request to exclude "Me Too" evidence is based on an overly restrictive interpretation of the law, in which they assert an improper standard for introducing such evidence. Specifically, Defendant is attempting to argue that "Me Too" evidence can only be admitted if the employees involved are "similarly situated" to the plaintiff in all respects. This argument is misguided. While it is true that the most compelling evidence would come from employees who are nearly identical to the plaintiff in terms of job position, responsibilities, and circumstances surrounding the adverse action, the law does not require that employees be "identical" in every respect. As the Fifth Circuit has repeatedly held, the standard for determining whether employees are "similarly situated" is whether they are "nearly identical" in relevant respects—such as job duties, supervisor, and the decision-makers involved in the adverse action. See *Martin*, 432 Fed. Appx. at 410; *Hoffman*, 597 Fed. Appx. at 233.

10

Defendant PMM's attempt to exclude "Me Too" evidence based on the overly broad claim that only employees who are "identical" to Plaintiff should be considered similarly situated is both legally flawed and unfairly prejudicial to Plaintiff's case. If Plaintiff can present evidence that other employees, even if not perfectly identical in every way, were treated differently in similar situations, such evidence is still highly relevant to demonstrate that PMM's actions were not based on legitimate, non-discriminatory reasons. For instance, if other employees engaged in comparable misconduct but were not terminated, or if they were subjected to more lenient disciplinary measures, this could provide strong circumstantial evidence that PMM's stated reason for Plaintiff's termination—such as her alleged misconduct—was pretextual and motivated by discriminatory animus.

Additionally, excluding "Me Too" evidence would unfairly deprive Plaintiff of the opportunity to demonstrate that the discriminatory treatment she experienced was part of a larger, systemic problem within PMM. Without this evidence, the jury would be left without a critical piece of the puzzle in understanding the broader context of Plaintiff's claims. Such a restriction would severely limit Plaintiff's ability to fully develop the facts of her case, and effectively prevent the jury from evaluating whether PMM's actions were consistent with a pattern of race or age discrimination.

In *Mendelsohn*, the Supreme Court held that "Me Too" evidence may be admissible if it provides sufficient context for understanding the discriminatory conduct at issue. *Mendelsohn*, 552 U.S. 379. While *Mendelsohn* left room for the trial court's discretion in determining the admissibility of such evidence, it emphasized the importance of considering the relevance and probative value of such evidence to the

11

plaintiff's claims. In this case, Plaintiff's claims of race and age discrimination would be significantly strengthened by the introduction of "Me Too" evidence, and excluding this evidence would deprive the jury of important context in evaluating whether Defendant PMM's conduct was motivated by unlawful discriminatory intent.

Thus, Defendant's motion to exclude "Me Too" evidence should be denied, as it seeks to impose an improper and overly restrictive standard that would unfairly limit Plaintiff's ability to present a complete and accurate record of the discriminatory treatment she alleges. Such evidence is not only relevant but essential to Plaintiff's case and should be allowed to be presented at trial.

**E. Vagueness of Defendant's Motion**

Lastly, Defendant's motion *in limine* is fundamentally flawed due to its vagueness and lack of specificity. The motion does not identify specific examples or details regarding the evidence it seeks to exclude, which places Plaintiff in a difficult position to provide a meaningful and detailed response. The motion generally refers to the exclusion of "pattern and practice" or "Me Too" evidence, as well as evidence related to "unrelated incidents," but it fails to outline the precise scope of the evidence it is attempting to exclude or the specific reasons why such evidence should be deemed irrelevant or prejudicial.

This lack of detail prevents Plaintiff from adequately addressing the issues raised in Defendant's motion. Without clear identification of the precise evidence in question, Plaintiff is left guessing about the exact nature of the evidence PMM seeks to exclude. As a result, Plaintiff is deprived of the opportunity to assess whether the evidence is, in fact, relevant, and whether it meets the threshold for admissibility under the Federal

12

Rules of Evidence. The general and overly broad nature of Defendant's motion makes it impossible for Plaintiff to provide a focused and detailed response that addresses the specific claims made by the Defendant.

For example, Defendant refers to the exclusion of "pattern and practice" evidence but does not clarify what specific incidents or pieces of evidence PMM considers to be part of a "pattern and practice" of discrimination. Does Defendant seek to exclude all instances of alleged race or age discrimination within the company, or only specific examples that Plaintiff intends to rely on at trial? The lack of specificity makes it impossible for Plaintiff to determine the true scope of Defendant's request. Similarly, the motion's reference to "unrelated incidents" is insufficiently defined. Plaintiff has no way of knowing what incidents PMM considers to be "unrelated" or how the Defendant differentiates between "relevant" and "irrelevant" incidents. This ambiguity is particularly troubling when considering evidence of disparate treatment, such as testimony from employees who were similarly situated or who experienced similar discrimination. If PMM is seeking to exclude all evidence of other employees' treatment, regardless of whether those employees had similar positions, duties, or circumstances, the motion's lack of clarity prevents Plaintiff from making a complete and informed response.

Furthermore, the general reference to "unrelated individuals" compounds the vagueness. Who are these "unrelated individuals"? Are they employees in different departments, positions, or locations? Without a clear description of what Defendant considers "unrelated," Plaintiff is left without a foundation to argue the relevance of this evidence or explain why it should be admitted. Given that the law permits the

introduction of evidence regarding similarly situated employees, especially where a pattern of discrimination is alleged, Defendant's failure to specify which individuals or incidents they wish to exclude hinders Plaintiff's ability to assess the potential impact on her case.

This lack of specificity also deprives the Court of the necessary information to make an informed decision. A motion *in limine* should clearly state the nature of the evidence being sought for exclusion, provide a basis for why the evidence should be excluded, and demonstrate that the evidence in question is truly irrelevant or prejudicial to the case. Defendant's motion does none of these things, leaving Plaintiff in a position where she cannot fully assess the motion's merit or adequately prepare her response. Additionally, the absence of specific details undermines Defendant's ability to make a compelling argument. A motion to exclude evidence is a significant request that should be supported by clear, specific examples. Without such details, the motion becomes an improper, sweeping attempt to exclude entire categories of evidence without providing any explanation of how such evidence is detrimental to the case. This broad-brush approach is inherently unfair to Plaintiff, who is left with limited ability to rebut the motion or provide the Court with a detailed justification for the relevance of the evidence at issue.

Defendant's vague and overly broad motion is not only unfair to Plaintiff, but it also violates the basic principles of fairness and due process that underpin the litigation process. By failing to identify which specific evidence is at issue, Defendant has created an unnecessary ambiguity that makes it difficult for Plaintiff to mount a proper defense to the motion. Plaintiff respectfully requests that the Court require Defendant to provide

more specific details regarding the evidence they seek to exclude, ensuring that Plaintiff has the ability to fully assess the motion and present an adequate response.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff Tina McNeal respectfully requests that the Court deny Defendant Premier Medical Management of Mississippi, Inc.'s Motion *in Limine* to exclude evidence of broad allegations of age or race discrimination, evidence of unrelated incidents, and evidence regarding the treatment of other employees not similarly situated. As demonstrated, the evidence that Defendant seeks to exclude is not only highly relevant but also essential to Plaintiff's claims of race and age discrimination, and its exclusion would severely hinder Plaintiff's ability to establish the discriminatory context surrounding her termination.

The evidence regarding PMM's broader practices of discrimination, including "Me Too" evidence, is critical to establishing discriminatory intent and pretext. The law allows for such evidence to be presented, even if it involves employees who are not perfectly identical to the Plaintiff, as long as they are similarly situated in relevant respects. Moreover, Defendant's motion is fundamentally flawed due to its vagueness, as it fails to provide specific examples of the evidence it seeks to exclude, preventing Plaintiff from offering a detailed and meaningful response.

Excluding this evidence would deprive Plaintiff of a fair opportunity to demonstrate that PMM's actions were motivated by unlawful discrimination and would leave the jury with an incomplete understanding of the facts. Plaintiff has the right to fully present all relevant evidence to support her case, and any concerns about prejudice or confusion can be addressed by appropriate jury instructions.

15

Plaintiff respectfully requests that the Court deny Defendant's motion and allow the evidence in question to be presented at trial, ensuring a fair and just proceeding that accurately reflects the circumstances of her termination.

THIS, the 23rd day of December, 2024.

Respectfully submitted,

/s Jane A. Watson
JANE A. WATSON, MB #106877
NICK NORRIS, MB #101574
Attorney for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1501 Jackson Ave. W. STE 113 PMB 101
Oxford, Mississippi 38655
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
jane@watsonnorris.com

## CERTIFICATE OF SERVICE

I, Jane A. Watson, attorney for Plaintiff, do hereby certify that I have this day served via ECF or by United States mail, postage prepaid, a true and correct copy of the above and foregoing document to all counsel of record:

SO CERTIFIED, this the 23rd day of December, 2024.

/s Jane A. Watson

JANE A. WATSON